UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC BERNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:20-cv-50413 |
| vs. | ) | |
| | ) | Honorable Iain D. Johnston |
| AMBER ALLEN, LACI BARLOW, | ) | |
| TAMARA BEABER, MONICA | ) | |
| CARPENTER, JACOB CASSIDY, | ) | |
| JAMIE CHESS, CNA DECRANE, | ) | |
| ROBERT EDDINGER, CNA FELDER, | ) | |
| CARLOS FIOR, ANN GANGER, | ) | |
| CECILIA GROSSMAN, NURSE HAYES, | ) | |
| ASHLEY HEFFELFINGER, JULIANA | ) | |
| HENDRIKSEN, NURSE HOFFMAN, | ) | |
| JENNIFER HOFILENA, DACIA | ) | |
| HUTCHISON, ROB JEFFREYS, TEENA | ) | |
| LEWIS, JACOB LONG, NURSE | ) | |
| MARTIN, QMHP MILLER, OFFICER | ) | |
| MILLER, SONJA NICKLAUS, CNA | ) | |
| RUSSELL, MAURICIO SOTELO, | ) | |
| MIRELLA SUSNJAR, ANDREA TACK, | ) | |
| MICHAEL TUNINK, JOHN VARGA, | ) | |
| OFFICER WANKELEY, AMIE WATSON, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| TARRY WILLIAMS, OFFICER | ) | |
| WOLOSONOVICH, MELISSA YOUNG, | ) | |
| MERRILL ZAHTZ, UNKNOWN IDOC | ) | |
| EMPLOYEES, *and* UNKNOWN | ) | |
| WEXFORD EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Eric Bernard (#R-25398), by and through his attorneys of Ice Miller LLP, brings

this Third Amended Complaint to remedy violations of his Eighth Amendment rights sustained

while incarcerated at Dixon Correctional Center in Illinois. In support of this action, Mr. Bernard

alleges as follows:

## I.    <u>INTRODUCTION</u>

1.       This civil rights action is brought to redress Mr. Bernard's federally protected rights under the Eighth Amendment of the United States Constitution.

2.       Mr. Bernard is a forty-year-old Black man in the care and custody of the Illinois Department of Corrections ("IDOC"). He is currently incarcerated at Dixon Correctional Center ("Dixon") in Dixon, Illinois. As an IDOC inmate, Mr. Bernard relies on IDOC authorities and services to adequately treat his medical needs.

3.       Mr. Bernard has been diagnosed with numerous long-lasting mental disabilities and his body is severely disabled. As a result, Mr. Bernard is almost completely incapacitated and requires total self-care assistance.

4.       Due to the persistent efforts of an attorney advocate, Mr. Bernard was transferred to Dixon from another IDOC facility on September 6, 2019, because Dixon was supposedly better equipped than other correctional facilities to provide Mr. Bernard with the medical treatment and self-care assistance he requires on a daily basis.

5.       However, Mr. Bernard continues to be denied adequate medical care at Dixon, and is routinely subjected to inhumane treatment, intentional neglect, and abuse. Accordingly, Mr. Bernard brings this action to redress the numerous Eighth Amendment violations he has endured—and continues to endure—while incarcerated at Dixon.

## II.    <u>JURISDICTION AND VENUE</u>

6.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a), as Mr. Bernard's causes of action are brought under the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

7.      This Court has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4 and the Illinois Long Arm Statute, 735 ILCS 5/2-209(a), because all alleged acts and omissions occurred within the boundaries of the State of Illinois.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more Defendants reside(s) in the Northern District of Illinois, and all events giving rise to the claims asserted in this lawsuit arose in this judicial district.

### III.    PARTIES

9.      Plaintiff Eric Bernard (R-25398) has been in the care and custody of IDOC since approximately April 2010.  On September 6, 2019, Mr. Bernard was transferred to Dixon.  Because he suffers from numerous physical and psychological disabilities that leave him unable to sit, stand, walk, eat, bathe, toilet, or change clothes without near-total assistance, Mr. Bernard permanently resides in Dixon's Health Care Unit.

### A.  Wexford Defendants

10.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford"), is a Florida corporation doing business in Illinois, with its principal place of business in Pittsburgh, Pennsylvania.  At all relevant times, Wexford has had a contractual relationship with IDOC, by which IDOC, an agency of the State of Illinois, delegated responsibility to Wexford for providing appropriate medical care to inmates in IDOC custody.  As an IDOC agent exercising delegated governmental functions, Wexford is considered a state actor under 42 U.S.C. § 1983. Wexford was therefore, at all relevant times, acting under color of law by and through its lawful agents to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Wexford in its individual and official capacity.

11.     Upon information and belief, Defendant AMBER ALLEN ("Nurse Allen") has been, at some or all relevant times, employed by Wexford as a nursing administrator, and was part of the medical staff at Dixon responsible for Mr. Bernard's care.  At all relevant times, Nurse Allen was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Nurse Allen in her individual capacity.

12.     Upon information and belief, Defendant LACI BARLOW ("CNA Barlow") has been, at some or all relevant times, employed by Wexford as a certified nursing assistant ("CNA"), and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At all relevant times, CNA Barlow was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Barlow in her individual capacity.

13.     Upon information and belief, Defendant TAMARA BEABER ("LSW Beaber") has been, at some or all relevant times, employed by Wexford as a licensed social worker ("LSW"), and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon. At all relevant times, LSW Beaber was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against LSW Beaber in her individual capacity.

14.     Upon information and belief, Defendant MONICA CARPENTER ("Nurse Carpenter") has been, at some or all relevant times, employed by Wexford as a nurse and Director of Nursing, and has been part of the medical staff at Dixon responsible for Mr. Bernard's care. At all relevant times, Nurse Carpenter was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Nurse Carpenter in her individual capacity.

15.     Upon information and belief, Defendant JAMIE CHESS, Psy.D. ("Dr. Chess"), has been, at some or all relevant times, employed by Wexford as a psychologist and psychologist administrator, and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon.  At some or all relevant times, Dr. Chess was the Psychologist Administrator at Dixon, responsible for overseeing, supervising, and authorizing the provision of mental health services to Dixon inmates.  At all relevant times, Dr. Chess was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Dr. Chess in her individual capacity.

16.     Upon information and belief, Defendant CNA DECRANE has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, CNA Decrane was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Decrane in her individual capacity.

17.     Upon information and belief, Defendant CNA FELDER has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, CNA Felder was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Felder in her individual capacity.

18.     Upon information and belief, Defendant CARLOS FIOR, M.D. ("Dr. Fior"), has been, at some or all relevant times, employed by Wexford as a physician, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, Dr. Fior was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Dr. Fior in his individual capacity.

19.     Upon information and belief, Defendant CECILIA GROSSMAN ("CNA Grossman") has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, CNA Grossman was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Grossman in her individual capacity.

20.     Upon information and belief, Defendant NURSE HAYES has been, at some or all relevant times, employed by Wexford as a nurse, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, Nurse Hayes was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Nurse Hayes in her individual capacity.

21.     Upon information and belief, Defendant ASHLEY HEFFELFINGER ("Nurse Heffelfinger") has been, at some or all relevant times, employed by Wexford as a nurse, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, Nurse Heffelfinger was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Nurse Heffelfinger in her individual capacity.

22.     Upon information and belief, Defendant JULIANA HENDRIKSEN ("CNA Hendriksen") has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, CNA Hendriksen was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Hendriksen in her individual capacity.

23.     Upon information and belief, Defendant NURSE HOFFMAN has been, at some or all relevant times, employed by Wexford as a nurse, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, Nurse Hoffman was acting

under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Nurse Hoffman in her individual capacity.

24.     Upon information and belief, Defendant JENNIFER HOFILENA ("Nurse Hofilena") has been, at some or all relevant times, employed by Wexford as a nurse, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At all relevant times, Nurse Hofilena was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Nurse Hofilena in her individual capacity.

25.     Upon information and belief, Defendant DACIA HUTCHISON ("Nurse Hutchison") has been, at some or all relevant times, employed by Wexford as a nurse and nursing supervisor, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At all relevant times, Nurse Hutchison was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Nurse Hutchison in her individual capacity.

26.     Upon information and belief, Defendant TEENA LEWIS ("CNA Lewis") has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At all relevant times, CNA Lewis was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against CNA Lewis in her individual capacity.

27.     Upon information and belief, Defendant NURSE MARTIN has been, at some or all relevant times, employed by Wexford as a nurse, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At all relevant times, Nurse Martin was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Nurse Martin in her individual capacity.

28.     Upon information and belief, Defendant QMHP MILLER has been, at some or all relevant times, employed by Wexford as a qualified mental health professional ("QMHP"), and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon.  At all relevant times, QMHP Miller was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against QMHP Miller in her individual capacity.

29.     Upon information and belief, Defendant CNA RUSSELL has been, at some or all relevant times, employed by Wexford as a CNA, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, CNA Russell was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against CNA Russell in her individual capacity.

30.     Upon information and belief, Defendant MIRELLA SUSNJAR ("Dr. Susnjar") has been, at some or all relevant times, employed by Wexford as a psychologist, and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon.  At all relevant times, Dr. Susnjar was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Dr. Susnjar in her individual capacity.

31.     Upon information and belief, Defendant MICHAEL TUNINK ("PT Tunink") has been, at some or all relevant times, employed by Wexford as a physical therapist, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon.  At all relevant times, PT Tunink was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against PT Tunink in his individual capacity.

32.     Upon information and belief, Defendant AMIE WATSON ("QMHP Watson") has been, at some or all relevant times, employed by Wexford as a qualified mental health professional,

and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon. At all relevant times, QMHP Watson was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against QMHP Watson in her individual capacity.

33. Upon information and belief, Defendant MELISSA YOUNG, Psy.D. ("Dr. Young") has been, at some or all relevant times, employed by Wexford as a licensed clinical psychologist, and has been part of the medical staff responsible for Mr. Bernard's mental healthcare at Dixon. At all relevant times, Dr. Young was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Dr. Young in her individual capacity.

34. Upon information and belief, Defendant MERRILL ZAHTZ, M.D. ("Dr. Zahtz"), has been, at some or all relevant times, employed by Wexford as a physician, and has been part of the medical staff responsible for Mr. Bernard's care at Dixon. At some or all relevant times, Dr. Zahtz was the Medical Director at Dixon, responsible for overseeing, supervising, and authorizing the provision of medical services to Dixon inmates. At all relevant times, Dr. Zahtz was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Dr. Zahtz in his individual capacity.

35. Upon information and belief, Defendants UNKNOWN WEXFORD EMPLOYEES have been, at some or all relevant times, employed by Wexford as medical staff, and were part of the medical team responsible for Mr. Bernard's care at Dixon. At all relevant times, Unknown Wexford Employees were acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Unknown Medical Staff Defendants in their individual capacities.

## B. IDOC Defendants

36.     Upon information and belief, Defendant JACOB CASSIDY ("Officer Cassidy") has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Cassidy was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Officer Cassidy in his individual capacity.

37.     Upon information and belief, Defendant ROBERT EDDINGER ("Officer Eddinger") has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Eddinger was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Officer Eddinger in his individual capacity.

38.     Upon information and belief, Defendant ANN GANGER ("Lt. Ganger") has been, at some or all relevant times, employed by IDOC as a lieutenant security officer at Dixon.  At all relevant times, Lt. Ganger was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Lt. Ganger in her individual capacity.

39.     Upon information and belief, Defendant ROB JEFFREYS ("Director Jeffreys") is and has been the Director of IDOC since June 1, 2019, where he is responsible for administering IDOC's policies and procedures at all correctional facilities in Illinois, including Dixon, and for overall operations of IDOC.  At all relevant times, Director Jeffreys served in an official capacity and was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Director Jeffreys in his official and individual capacities.

10

40.     Upon information and belief, Defendant JACOB LONG ("Lt. Long") has been, at some or all relevant times, employed by IDOC as a lieutenant security officer at Dixon.  At all relevant times, Lt. Long was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Lt. Long in his individual capacity.

41.     Upon information and belief, Defendant OFFICER MILLER has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Miller was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights. This action is brought against Officer Miller in his individual capacity.

42.     Upon information and belief, Defendant SONJA NICKLAUS ("Warden Nicklaus") was formerly the Warden at Dixon during some of Mr. Bernard's incarceration there, and is currently employed by IDOC.  At all relevant times, she served in an official capacity and under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Warden Nicklaus in her individual capacity.

43.     Upon information and belief, Defendant MAURICIO SOTELO ("Officer Sotelo") has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Sotelo was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Officer Sotelo in his individual capacity.

44.     Upon information and belief, Defendant ANDREA TACK ("Warden Tack") was formerly the Warden at Dixon during some of Mr. Bernard's incarceration there, and is currently employed by IDOC.  At all relevant times, she served in an official capacity and under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Warden Tack individual capacity.

45.     Upon information and belief, Defendant JOHN VARGA ("Warden Varga") was formerly the Warden at Dixon during some of Mr. Bernard's incarceration there, and is currently employed by IDOC.  At all relevant times, he served in an official capacity and under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Warden Varga in his individual capacity.

46.     Upon information and belief, Defendant OFFICER WANKELEY has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Wankeley was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Officer Wankeley in his individual capacity.

47.     Upon information and belief, Defendant TARRY WILLIAMS ("Warden Williams") is employed by IDOC as the Acting Warden at Dixon, where he has official policy-making authority over prison operations, including the medical care of inmates.  At all relevant times, Warden Williams has served in an official capacity and under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Warden Williams in his official capacity.[1]

48.     Upon information and belief, Defendant OFFICER WOLOSONOVICH has been, at some or all relevant times, employed by IDOC as a security officer at Dixon.  At all relevant times, Officer Wolosonovich was acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Officer Wolosonovich in his individual capacity.

---

[1] Counsel for Warden Williams has refused to produce information relevant to grievances filed by Plaintiff after the filing of this Action. Plaintiff is attempting to resolve this discovery dispute without Court intervention and reserves the right to move to amend this Complaint to allege individual liability against Warden Williams upon further discovery.

49.     Upon information and belief, Defendants UNKNOWN IDOC EMPLOYEES have been, at some or all relevant times, employed as security officers at Dixon, and were responsible for security in Mr. Bernard's unit and/or for transporting Mr. Bernard within and outside of Dixon. At all relevant times, Unknown IDOC Employees were acting under color of law to deprive Mr. Bernard of his constitutionally protected rights.  This action is brought against Unknown IDOC Employees in their individual capacities.

## IV.     FACTS

### A.  Mr. Bernard Suffers From Objectively Serious Medical Conditions

50.     Mr. Bernard's entire life has been plagued by tragedy and unfortunate circumstances.  As a result, Mr. Bernard suffers from acute post-traumatic stress disorder and other lasting mental disabilities, including bipolar 1 disorder, schizophrenia, borderline personality disorder, and antisocial personality disorder, and has an extensive history of suicide attempts.  He is additionally at risk for knowledge deficits and seizure-like activity.  Failure to adequately treat these illnesses is likely to result in significant injury to Mr. Bernard.

51.     During a suicide attempt on or around March 20, 2019, while in the care and custody of IDOC's Pontiac Correctional Center, Mr. Bernard lost massive amounts of blood and suffered multiple stroke-like episodes that left him partially paralyzed in both of his legs and his right arm.

52.     As a result of this incapacitation, Mr. Bernard is unable to walk, stand, or sit up on his own.  Having lost feeling and control in all but his left hand, Mr. Bernard is unable to perform basic tasks, such as eating, bathing, using the restroom, and changing his clothes, without total assistance.  He does not have control over his bowels and wears a diaper that must be changed at

regular intervals. Failure to adequately treat these physical impairments is likely to result in further significant injury to Mr. Bernard.

53. In April 2019, Mr. Bernard was admitted to the University of Illinois Medical Center, where he was diagnosed with left-sided multifocal subacute infarcts, *i.e.*, extensive and pervasive expanse of brain cell death on his left lobe. Mr. Bernard's providers additionally noted that blood had pooled in his right occipital lobe, and that his MRI was positive for perivascular chronic inflammation, gliosis, and perivascular hemorrhage.

54. On or around September 6, 2019, Mr. Bernard was transferred to Dixon from another IDOC facility, as Dixon was supposedly better equipped to provide Mr. Bernard with the necessary medical treatment he requires on a daily basis. He is housed in Dixon's Health Care Unit and requires total self-care assistance.

55. Due to his inability to sit, stand, or walk on his own, Mr. Bernard requires the use of a Hoyer's Manual Hydraulic Lift ("Hoyer Lift") to assist with his mobility. The Hoyer Lift is necessary to move Mr. Bernard in and out of his bed, mobile chair, and bathtub.

56. When otherwise ambulating, Mr. Bernard requires the use of a transport chair. Because Mr. Bernard is unable to sit up straight on his own, he cannot sit in a typical wheelchair without falling out, and Dixon has provided Mr. Bernard with a geriatric chair ("Geri Chair"), which allows him to remain reclining while staff transports him throughout the facility and while he eats or takes medication.

### B. Defendants Have Knowledge of Mr. Bernard's Objectively Serious Medical Conditions

57. At all relevant times, all Defendants had knowledge of Mr. Bernard's objectively serious medical conditions, primarily because Mr. Bernard is housed in the Health Care Unit at Dixon and requires total self-care assistance.

14

58.     Additionally, Mr. Bernard has filed more than 100 grievances and appeals while incarcerated at Dixon detailing all of the conditions and failures to provide adequate care set forth in this Third Amended Complaint.  Wardens and prison officials are responsible for overseeing the resolution process for prisoner grievances, and the Warden signs each submitted grievance.

59.     Such grievances provide notice of Mr. Bernard's conditions and treatment to Director Jeffreys and the Warden at the time—whether Warden Williams, Warden Tack, Warden Nicklaus, or Warden Varga—and further provide notice to those Dixon employees named in each grievance.  Mr. Bernard has therefore exhausted his administrative remedies as required.

60.     In addition to the countless grievances he has filed, Mr. Bernard has also made multiple personal complaints regarding his conditions and treatment to Defendants.

61.     As a result of Mr. Bernard's grievances, personal complaints, and/or from their own personal observations, Defendants have knowledge of Mr. Bernard's serious medical conditions as well as Defendants' collective and individual failures to provide adequate care and protection to Mr. Bernard.

62.     Wexford has also been made aware of Mr. Bernard's lack of adequate medical care via multiple sources aside from Mr. Bernard himself, including through its own staff, IDOC personnel, court orders and decisions in Mr. Bernard's paternity case, and the multiple other lawsuits Mr. Bernard has filed against Wexford.

## C. Defendants Acted with Deliberate Indifference Toward Mr. Bernard's Objectively Serious Medical Conditions with Regard to Systemic Deficiencies

63.     As detailed below, Defendants have acted, and continue to act, with deliberate indifference toward Mr. Bernard's objectively serious medical needs by failing to remedy systemic deficiencies with necessary medical equipment, medical staffing, and medical treatment plans.

*a. Deliberate Indifference to Systemic Deficiencies Regarding Hoyer Lift*

64.     Upon Mr. Bernard's transfer in September 2019, Dixon did not have a functioning Hoyer Lift.

65.     After Mr. Bernard had been incarcerated at Dixon for approximately three months, Dixon finally acquired a Hoyer Lift.  However, the Hoyer Lift is in a state of disrepair and is wholly unsafe, and Dixon's medical staff avoids using the Hoyer Lift whenever possible.

66.     Mr. Bernard has routinely voiced concerns, personally and through the filing of numerous grievances, that the Hoyer Lift was not safe.

67.     Due to Defendants' unwillingness and/or inability to safely use and/or replace the Hoyer Lift, Mr. Bernard has fallen out of the Hoyer Lift on numerous occasions, resulting in painful injuries and unnecessary suffering.

68.     On or around November 26, 2019, CNA Russell and an Unknown Wexford Employee lifted Mr. Bernard into the Hoyer Lift. CNA Russell then improperly twisted the release knob and dropped Mr. Bernard onto the arm of the Geri Chair below, resulting in injuries to Mr. Bernard's back.  CNA Russell laughed.

69.     On or around December 5, 2019, CNA Russell improperly used the Hoyer Lift to lift Mr. Bernard.  The metal bars of the Hoyer Lift came down and struck Mr. Bernard in the face, resulting in injuries to his jaw and a temporary inability to speak.

70.     On or around April 7, 2020, Mr. Bernard filed a grievance stating that the Hoyer Lift was having complications and making strange noises.  Mr. Bernard explicitly requested a new Hoyer Lift, but his request was denied.

71.     On or around August 23, 2020, CNA Decrane improperly used the Hoyer Lift and dropped Mr. Bernard, resulting in painful injuries and unnecessary suffering.

16

72.     On or around October 11, 2020, CNA Russell, CNA Grossman, Nurse Heffelfinger, and Nurse Allen informed Mr. Bernard that he would not receive a bath because the Hoyer Lift slings were not safe.  At the time, Mr. Bernard had not received a bath in three weeks.

73.     As a result of the aforementioned Defendants' inability and/or unwillingness to safely move Mr. Bernard in the Hoyer Lift and/or obtain a properly functioning Hoyer Lift, Mr. Bernard is denied basic needs, such as baths, diaper changes, and clothing changes, resulting in painful sores, rashes, and unnecessary suffering.

   b.  *Deliberate Indifference to Systemic Deficiencies Regarding Geri Chair*

74.     Because Mr. Bernard is unable to sit up straight on his own, he cannot sit in a wheelchair without falling out.  Defendants are aware that Mr. Bernard cannot hold himself up in a wheelchair, yet Dixon does not have an appropriate transport chair that can be used to safely mobilize Mr. Bernard.

75.     Instead, Dixon has provided Mr. Bernard with a Geri Chair, which allows him to remain reclined while staff transports him throughout the facility.  However, the Geri Chair has broken cushioning and is unstable and unsafe.

76.     Mr. Bernard has routinely voiced concerns, personally and through the filing of numerous grievances, that the Geri Chair was not safe or suitable for use.

77.     Because the Geri Chair is not an appropriate transport chair, when Mr. Bernard needs to be taken outside of Dixon, the Geri Chair is not able to be secured inside the transport van, resulting in painful injuries to Mr. Bernard.

78.     On or around October 25, 2019, when Mr. Bernard needed to be taken to an outside medical appointment, Unknown IDOC Employees and Warden Varga ordered Mr. Bernard to be transported in the Geri Chair in the transport van.  Because the Geri Chair could not be secured,

Mr. Bernard fell out of the Geri Chair while the van was in motion, resulting in painful injuries to Mr. Bernard.

79.     Nurse Allen is aware that Mr. Bernard needs an ambulance to be safely transported—rather than using the Geri Chair that cannot be secured in the transport van—yet she has failed to ensure such appropriate transportation is provided.

80.     On or around November 25, 2019, CNA Russell and Nurse Hutchison placed Mr. Bernard in a wheelchair for preparation to transport him to an outside hospital.  When Mr. Bernard kept sliding out of the wheelchair, CNA Russell and Nurse Hutchison strapped his ankles to the wheelchair, which did not prevent Mr. Bernard's upper body from sliding over the side of the wheelchair.  CNA Russell and Nurse Hutchison then left Mr. Bernard alone in a hallway like this for over an hour, resulting in pain, embarrassment, and difficulty breathing to Mr. Bernard.

81.     Due to the demolished padding and fissures in Mr. Bernard's Geri Chair, the Geri Chair becomes unsanitary when Mr. Bernard is made to sit for hours in a soiled diaper.  As a result, Mr. Bernard has developed painful rashes and sores.

82.     Dr. Zahtz and Wexford acknowledged that Mr. Bernard's Geri Chair had become unsanitary and authorized a replacement chair on November 10, 2021.  However, the new Geri Chair was not received until approximately March 2022 and is similarly damaged so that it still cannot be adequately sanitized and cleaned.

83.     Because of the Geri Chair's broken cushioning, combined with Defendants' repeated refusals to clean Mr. Bernard and change his diapers as detailed below, Mr. Bernard has developed painful rashes and sores from his skin's contact with his own waste and traces of his waste left in the broken cushioning.

84.     Further, Mr. Bernard is forced to use the Geri Chair when having video calls with family members or attorneys.  However, the Geri Chair is too reclined for Mr. Bernard to be in the camera's view, and he is therefore denied adequate video calls.

85.     On May 9, 2022, Wexford and Dr. Zahtz acknowledged that Mr. Bernard's chairs were "unsafe to use," and a Deluxe Clinical Recliner was approved.

86.     As a result of the aforementioned Defendants' inability and/or unwillingness to transport Mr. Bernard safely or timely obtain a properly functioning transport chair, he has been denied activities offered to other inmates, such as yard time, gym, recreation, education, religious services, and rehabilitation programs.

   c.   *Deliberate Indifference to Systemic Deficiencies Regarding Medical Staffing*

87.     Dixon lacks adequate staff to provide the level of physical and psychological healthcare that Mr. Bernard requires.

88.     In the Health Care Unit where Mr. Bernard is housed, only one nurse and one CNA are assigned to each shift.  On some days, there is no CNA on duty whatsoever.

89.     On or around January 27, 2020, CNA Grossman refused to bathe Mr. Bernard because she was the only person working.

90.     On or around May 4, 2020, when Mr. Bernard complained he was not receiving his allotted three baths per week, CNA Grossman, CNA Barlow, and CNA Russell informed Mr. Bernard it was because they did not have enough staff to assist with bathing him.

91.     On or around September 28, 2020, no other medical staff were present to assist CNA Grossman with operating the Hoyer Lift to bathe Mr. Bernard.  While in the air, Mr. Bernard fell out of the Hoyer Lift and was injured.

92. On or around August 23, 2020, Nurse Hofilena refused to assist CNA Decrane with moving Mr. Bernard in the Hoyer Lift. Mr. Bernard was then dropped from the Hoyer Lift and injured.

93. Upon information and belief, a Dixon physician is required to make rounds weekly. However, weeks at a time often pass between rounds, during which Mr. Bernard's injuries and illnesses are left untreated and worsen. For example, Mr. Bernard did not see Dr. Zahtz from November 13, 2019, to December 10, 2019.

94. As a result of the aforementioned Defendants' unwillingness and/or inability to properly staff the Health Care Unit, Mr. Bernard is deprived of the effective, round-the-clock, and immediate personal care and other assistance he requires, and continues to needlessly suffer.

 *d. Deliberate Indifference to Systemic Deficiencies Regarding Medical Treatment Plans*

95. Upon information and belief, disabled inmates must be timely evaluated by the relevant medical staff, and must receive detailed medical treatment plans while incarcerated.

96. Dr. Zahtz and Dr. Fior failed to implement a Medical Treatment Plan for Mr. Bernard for several months after his transfer to Dixon in September 2019.

97. During this time, Mr. Bernard routinely complained that he did not have a Medical Treatment Plan in place.

98. Nurse Allen was aware that, by December 2019, Mr. Bernard still did not have a Medical Treatment Plan in place.

99. When a Medical Treatment Plan was finally implemented, it did not contemplate the self-care assistance Mr. Bernard requires, and failed to include a regular schedule for when Mr. Bernard should be moved out of bed and into his Geri Chair each day.

20

100.     PT Tunink failed to implement a Physical Therapy Treatment Plan for Mr. Bernard for several months after his transfer to Dixon in September 2019.

101.     In fact, PT Tunink did not even evaluate Mr. Bernard until he had been housed at Dixon for 42 days.

102.     During this time, Mr. Bernard routinely complained that he did not have a Physical Therapy Treatment Plan in place.

103.     Nurse Allen was aware that, by December 2019, Mr. Bernard still did not have a Physical Therapy Treatment Plan in place.

104.     When a Physical Therapy Treatment Plan was finally implemented, it did not provide for the necessary physical therapy, range-of-motion therapy, or occupational therapy Mr. Bernard requires.

105.     Due to the lack of, and delay in implementation of, an adequate Medical Treatment Plan and Physical Therapy Treatment Plan, Mr. Bernard's physical mobility and progress have been significantly hindered, causing him unnecessary pain and suffering.

106.     In fact, on February 3, 2022, Dr. Zahtz noted that Mr. Bernard had "physically deteriorated" since his confinement at Dixon, and recommended him for medical furlough "due to his continual need for total care."

107.     As a result of the aforementioned Defendants' unwillingness and/or inability to implement, maintain, and follow medical treatment plans, Mr. Bernard's objectively serious medical conditions and disabilities have worsened, and Mr. Bernard has needlessly suffered.

    *e.   Deliberate Indifference to Systemic Deficiencies Regarding Mental Health Treatment Plans*

108.    Dr. Chess, Dr. Young, Dr. Susnjar, LSW Beaber, QMHP Watson, and QMHP Miller failed to implement a Mental Health Treatment Plan for Mr. Bernard for several months after his transfer to Dixon in September 2019.

109.    By August 2020, Mr. Bernard still did not have a Mental Health Treatment Plan in place.

110.    During this time, Mr. Bernard routinely complained that he did not have a Mental Health Treatment Plan in place Nurse Allen, but Nurse Allen failed to take corrective action.

111.    Because of Mr. Bernard's grievances and repeated complaints during mental healthcare appointments and sessions, Dr. Chess, Dr. Young, Dr. Susnjar, LSW Beaber, QMHP Watson, and QMHP Miller were aware that Mr. Bernard's mental health was deteriorating without a Mental Health Treatment Plan in place, that he was regularly self-harming, and that he posed a high risk of attempted suicide.

112.    Even after a Mental Health Treatment Plan was put into place, Dr. Chess, Dr. Young, Dr. Susnjar, LSW Beaber, QMHP Watson, and QMHP Miller did not abide by it.

113.    On or about November 19, 2019, Mr. Bernard only received 30 minutes of behavioral therapy with "Mrs. Kerns" when he was supposed to receive a full hour. When Mrs. Kerns returned with adequate time later that day, Unknown IDOC Employees refused to let Mrs. Kerns treat Mr. Bernard.

114.    In approximately October 2020, Mr. Bernard was being denied access to a mental health specialist as required by his treatment plan, in that Mr. Bernard only saw QMHP Miller once per week.

115. Mr. Bernard is routinely denied out-of-cell time, group therapy, and visits with mental healthcare providers as required by his Mental Health Treatment Plan.

116. Due to the lack of, and delay in implementation of, an adequate Mental Health Treatment Plan, Mr. Bernard's mental health progress has been significantly hindered, causing him unnecessary pain and suffering.

117. As a result of the aforementioned Defendants' unwillingness and/or inability to implement, maintain, and follow Mental Health Treatment Plans, Mr. Bernard's serious mental health conditions have continued to worsen, and Mr. Bernard has needlessly suffered.

### D. Defendants Acted with Deliberate Indifference Toward Mr. Bernard's Objectively Serious Medical Conditions by Denying Him Adequate Medical Care

118. Despite having knowledge of Mr. Bernard's serious medical conditions and the necessary level of care he requires, Defendants have repeatedly refused to assist Mr. Bernard with self-care tasks, such as going to the bathroom, diaper changes, and bathing. As a result, Mr. Bernard is often left soiled in his own feces, vomit, and urine for hours—and sometimes days—at a time.[2]

119. Frequently, Mr. Bernard is left in his bed and/or Geri Chair all day and is not provided assistance with eating, bathing, using the bathroom, or changing his clothes.

120. As a result of regularly being refused baths and other hygiene assistance, Mr. Bernard has developed painful sores, rashes, fungus, and skin infections, of which at least Dr. Fior was aware.

---

[2] This situation has also been documented by the Illinois Court of Appeals. *See In re Adoption of T.B.*, 2021 IL App (4th) 200575-U, ¶ 77 ("We are chagrined by the situation Eric found himself in during the fitness hearing and potentially during the best-interest hearing. The record establishes Eric was forced to sit in his own feces and suffer injury while doing so.").

121.    Often, Dixon's medical staff refused to move Mr. Bernard into the Geri Chair to allow him to eat or take medication safely.  Mr. Bernard would be forced to eat and take medication lying down, resulting in choking and vomiting.

122.    As evidenced by Mr. Bernard's crisis watch observation logs, while on crisis watch, Mr. Bernard is not regularly moved to his Geri Chair and is left in bed constantly.

123.    On or around September 16, 2019, in the presence of Officer Wankeley, an Unknown Wexford Employee refused to clean Mr. Bernard and change his diaper.  Officer Wankeley did not interject.

124.    On or about September 24, 2019, Nurse Hutchison refused to clean Mr. Bernard when he was soaked in urine and feces.  Mr. Bernard had painful rashes from being left in such unsanitary conditions.

125.    On or about October 23, 2019, Unknown Wexford Employees refused to bathe Mr. Bernard or change his diaper when he was soaked in his own urine and feces.

126.    On or about October 2019, Unknown Wexford Employees refused to bathe Mr. Bernard or change his diaper when he was soaked in urine and feces.

127.    On November 15, 2019, Mr. Bernard complained of nerve damage and an infection in his left wrist, and requested an MRI.  His request was denied.

128.    On or about December 10, 2019, Mr. Bernard complained of injuries to his back, jaw, and stomach as a result of staff dropping Mr. Bernard from the Hoyer Lift. Mr. Bernard requested an MRI for these injuries, but Dr. Zahtz refused.

129.    On or about January 27, 2020, Officer Sotelo and Lt. Ganger observed Mr. Bernard covered in urine, feces, and vomit, but refused to contact medical to clean him.  Mr. Bernard was then taken to an attorney visit in this unsanitary state.

130. On or around May 4, 2020, Mr. Bernard complained that he was not receiving his allotted three baths per week. CNA Grossman refused to give Mr. Bernard a bath that day.

131. As a result of regularly being denied baths, Mr. Bernard obtained painful sores, rashes, fungus, and skin infections between his thighs. Dr. Fior was aware of these issues, as he prescribed Mr. Bernard medication to heal the sores, rashes, fungus, and infections.

132. While Mr. Bernard was on crisis watch from May 12, 2020, to July 29, 2020, CNA Russell, CNA Felder, CNA Barlow, CNA Decrane, and CNA Grossman refused to assist him with eating and bathing. During this time, Mr. Bernard was left in his own urine, feces, and old food for days at a time and was not allowed to file grievances.

133. On or about May 13, 2020, while on crisis watch, Nurse Hoffman refused to give Mr. Bernard prescribed medication (Effexor) without justification or medical direction. Mr. Bernard filed a grievance seeking to be put back on Effexor, but his request was denied.

134. On or around August 10, 2020, CNA Russell refused to move Mr. Bernard to the Geri Chair, and left him vomiting and choking in his bed.

135. On or around August 10, 2020, CNA Russell refused to change Mr. Bernard's diaper or clean him, and left him lying in feces, urine, and old food.

136. On or around November 18, 2020, an Unknown Wexford Employee noticed that Mr. Bernard had not been cleaned, bathed, or changed in several days, and ordered CNA Russell and CNA Lewis to bathe Mr. Bernard. CNA Russell refused to assist CNA Lewis with bathing Mr. Bernard.

137. In approximately August 2020, Nurse Heffelfinger, Nurse Martin, and Nurse Hayes refused to give Mr. Bernard medication that had been prescribed by Dr. Zahtz.

138.     In approximately September 2020, Warden Nicklaus, Nurse Allen, Nurse Carpenter, Nurse Hutchison, and Nurse Hofilena informed Mr. Bernard that he would not receive any self-care assistance when traveling on court or medical writs, despite acknowledging that he needed such assistance.

139.     On or about August 7, 2021, Mr. Bernard was left in his cell without a shower for two days after being pepper-sprayed without justification.

140.     Dr. Zahtz, Dr. Fior, CNA Russell, Nurse Hutchison, Nurse Carpenter, Nurse Allen, Nurse Hoffman, Dr. Young, LSW Beaber, QMHP Watson, Officer Miller, Officer Wankeley, Lt. Ganger, and Warden Nicklaus have each observed Mr. Bernard being left in urine, feces, vomit, and dried food, but refused to provide care or otherwise call for care.

141.     In approximately Fall of 2020, Director Jeffreys visited Dixon's Health Care Unit and personally observed Mr. Bernard in a soiled and un-cared for condition.  Mr. Bernard also made a personal complaint to Director Jeffreys about his condition and treatment at that time, but Director Jeffreys did not act.

142.     As a result of being denied medical care by the aforementioned Defendants, Mr. Bernard continues to suffer unnecessary pain, and his serious medical conditions continue to worsen.

### E. Defendants Acted with Deliberate Indifference Toward Mr. Bernard's Objectively Serious Medical Conditions by Inappropriately Delegating Medical Care to Untrained Inmates

143.     Although Defendants are aware of Mr. Bernard's serious medical conditions and necessary level of care, they routinely and willfully refuse to provide such care to him.

144.     Often, Defendants will order untrained inmates to perform medical tasks on Mr. Bernard that should only be carried out by doctors, nurses, and/or CNAs.  Inmates are not trained

26

to perform these tasks, and Mr. Bernard was often injured or left in soiled and unsanitary conditions.

145.    Often, CNA Grossman, CNA Russell, CNA Barlow, Nurse Carpenter, and Nurse Allen ordered untrained inmates to operate the Hoyer Lift with Mr. Bernard in it, resulting in falls and painful injuries to Mr. Bernard.

146.    Often, CNA Grossman, CNA Russell, CNA Barlow, and Nurse Allen ordered untrained inmates to transport Mr. Bernard in the Geri Chair, resulting in painful injuries to Mr. Bernard.

147.    In late 2021, CNA Grossman ordered an untrained inmate to move Mr. Bernard in the Geri Chair, resulting in injuries to Mr. Bernard.

148.    On or around September 16, 2019, in the presence of Officer Wankeley, an Unknown Wexford Employee ordered an untrained inmate to clean Mr. Bernard and change his diaper.  Officer Wankeley did not intervene.

149.    On or around October 25, 2019, Unknown Wexford Employees ordered untrained inmates to move Mr. Bernard from his bed into the Geri Chair.  During the attempt, Mr. Bernard's hair was ripped out.

150.    On December 13, 2019, in response to a grievance Mr. Bernard had filed, counselor "S. Johnson" asserted that, "[p]er the Health Care Administrator, no offenders should ever assist inmate Bernard."  Nonetheless, untrained inmates continued to do so under orders of Dixon staff.

151.    On or around January 27, 2020, Lt. Ganger ordered untrained inmates to move Mr. Bernard in his Geri Chair. Mr. Bernard was injured as a result.

152.    On approximately September 16, 2019, Unknown Wexford Employees ordered an untrained inmate to cut Mr. Bernard's toenails. Two months later, a doctor removed Mr. Bernard's infected and ingrown toenail as a result of this incident.

153.    On or around September 16, 2019, an Unknown Wexford Employee refused to clean Mr. Bernard and change his diaper, and instead ordered an untrained inmate to do so.

154.    On or around September 16, 2019, CNA Russell ordered "Inmate Milian" to move Mr. Bernard to the Geri Chair and change Mr. Bernard's diaper. When Mr. Bernard objected, CNA Russell responded that Mr. Bernard would not receive any assistance at all if he did not accept Inmate Milian's help. Mr. Bernard was then injured when Inmate Milian dropped him while attempting to move Mr. Bernard to the Geri Chair.

155.    On or around October 21, 2019, CNA Barlow and CNA Russell ordered "Inmate Milian" to change Mr. Bernard's diaper.

156.    On or around October 22, 2019, an Unknown Wexford Employee ordered "Inmate Milian" to change Mr. Bernard's diaper.

157.    On information and belief, "Inmate Milian" was ordered to change Mr. Bernard's diaper at least three more times in October 2019 under the orders of Unknown Wexford Employees.

158.    On several occasions beginning in August 2021, CNA Russell, CNA Grossman, CNA Hendriksen, CNA Lewis, CNA Decrane, and Unknown Wexford Employees ordered an untrained inmate to feed Mr. Bernard, change Mr. Bernard's diapers, bathe Mr. Bernard, clothe Mr. Bernard, and clip Mr. Bernard's nails.

159.    On or around September 12, 2021, in the presence of Unknown Wexford Employees, Lt. Long and Officer Cassidy ordered untrained inmates to move Mr. Bernard to his

Geri Chair. Lt. Long and Officer Cassidy then physically and sexually assaulted Mr. Bernard, intentionally kicked over the Geri Chair with Mr. Bernard in it, and ordered untrained inmates to pick up Mr. Bernard and the Geri Chair and take Mr. Bernard to his cell.

160. On or about March 18, 2022, CNA Grossman ordered an untrained inmate to feed Mr. Bernard and to change his diaper.

161. As a result of the inappropriate delegation of medical care to untrained inmates by the aforementioned Defendants, Mr. Bernard continues to suffer unnecessary pain, and his serious medical conditions continue to worsen.

**F. Defendants Acted with Deliberate Indifference Toward Mr. Bernard's Objectively Serious Medical Conditions by Denying Him Access to Specialists**

162. Despite having knowledge that Mr. Bernard requires treatment from physical therapy and mental health specialists, he is routinely denied such access.

163. On or about November 19, 2019, Mr. Bernard only received 30 minutes of behavioral therapy with "Mrs. Kerns" when he was supposed to receive a full hour per his Mental Health Treatment Plan. When Mrs. Kerns returned with adequate time to treat Mr. Bernard later that day, Unknown IDOC Employees refused to let Mrs. Kerns see Mr. Bernard.

164. In approximately October 2020, Mr. Bernard was being denied access to a mental health specialist as required by his Mental Health Treatment Plan, in that Mr. Bernard only saw QMHP Miller once per week.

165. In or around December 2019, Mr. Bernard was unable to engage in physical therapy due to numerous injuries from the Hoyer Lift. Mr. Bernard was then denied access to physical therapy for months, despite his Physical Therapy Treatment Plan requiring it.

166. Beginning in 2021, Mr. Bernard's Physical Therapy Plan required Mr. Bernard to have range-of-motion therapy twice per day. However, PT Tunink reduced Mr. Bernard's range-

of-motion therapy to once per day without justification, knowing that doing so would hinder Mr. Bernard's recovery and ability to perform basic self-care tasks.

167.    PT Tunink often refused to provide physical therapy to Mr. Bernard without justification.  At least Dr. Fior and Nurse Allen were aware of this, but did nothing.

168.    As a result of being denied access to mental health and physical therapy specialists by the aforementioned Defendants, Mr. Bernard's serious medical conditions continue to worsen, and he continues to needlessly suffer.

### G. Defendants Acted with Deliberate Indifference Toward Mr. Bernard's Objectively Serious Medical Conditions by Failing to Follow COVID-19 Protocols

169.    During the peak of the coronavirus outbreak in March 2020, Dr. Fior, Officer Eddinger, and Officer Wolosonovich regularly entered the health care unit without wearing a face-mask or gloves, in violation of IDOC's COVID-19 protocols and the Centers for Disease Control's ("CDC") COVID-19 guidelines.

170.    In approximately October 2020, CNA Lewis and CNA Hendriksen regularly reused and failed to clean medical equipment after checking inmates' vitals and temperatures, in violation of IDOC's COVID-19 protocols and the CDC's COVID-19 guidelines.

171.    Due to his multiple comorbidities, Mr. Bernard was especially susceptible to contracting COVID-19, yet Dr. Fior, Officer Eddinger, Officer Wolosonovich, CNA Lewis, and CNA Henriksen were deliberately indifferent to this risk.

172.    As a result of the refusal to follow COVID-19 protocols and guidelines by Dr. Fior, CNA Lewis, CNA Hendriksen, Officer Eddinger, and Officer Wolosonovich, Mr. Bernard contracted COVID-19 and suffered unnecessarily.

**H. Defendants Fail to Protect Mr. Bernard Against Self-Harm and Suicide Attempts**

173.     Mr. Bernard has been diagnosed with several mental illnesses including bipolar 1 disorder, schizophrenia, post-traumatic stress disorder, borderline personality disorder, and antisocial personality disorder, of which Defendants are aware.

174.     Beginning in September 2019, in an effort to address his self-harming and suicidal thoughts, Mr. Bernard made numerous requests to members of Dixon's staff, including Officer Cassidy, Officer Eddinger, and CNA Grossman, to be seen by a crisis team member, but his requests were unjustifiably denied.

175.     From approximately September 2019 through early 2021, Mr. Bernard made several attempts at self-harm and/or suicide. Each of these events was documented, and Dixon's staff, including Dr. Young, Dr. Susnjar, QMHP Watson, and Dr. Fior were aware of them.

176.     On or about April 16, 2020, Mr. Bernard asked Officer Eddinger to speak to a crisis team member, but Officer Eddinger refused to call for one.  Later that day, Mr. Bernard attempted suicide by swallowing large sharp metal objects.  Mr. Bernard informed Dr. Fior of this incident, but Dr. Fior did nothing.

177.     On or about May 8, 2020, Mr. Bernard asked Officer Cassidy to speak to a crisis team member, but Officer Cassidy denied his request.  Later that day, Mr. Bernard attempted suicide by swallowing nails.  Mr. Bernard subsequently informed Nurse Heffelfinger, Nurse Hofilena, CNA Grossman, and CNA Barlow of this incident, but they did nothing and denied Mr. Bernard medical treatment.

178.     On or about June 11, 2020, while on crisis watch, Mr. Bernard was moved out of a crisis cell and into a non-crisis cell with exposed wires and broken socket covers.  There was no bed in the cell, and Mr. Bernard was left on the floor with live wires next to his face.

179.     On or about June 13, 2020, while on crisis watch, Mr. Bernard was moved out of a crisis cell and into a non-crisis cell with live exposed wires and shards of metal.  There was no bed in the cell, and Mr. Bernard was left on the floor in old urine and feces.  Mr. Bernard asked to speak to a crisis team member but was refused.

180.     On or about June 15, 2020, while on crisis watch, Mr. Bernard was moved out of a crisis cell and into a non-crisis cell with exposed wires and broken socket covers.  In the presence of Unknown Wexford Employees, Mr. Bernard then attempted suicide by swallowing shards of plastic from the broken socket covers and wires.

181.     On or about June 17, 2020, while on crisis watch, Mr. Bernard was moved out of a crisis cell and into a non-crisis cell with broken socket covers, live wires, loose nails, and loose screws.

182.     On or about June 22, 2020, while on crisis watch, Mr. Bernard was moved out of a crisis cell and into a non-crisis cell with loose nails in the walls.  Mr. Bernard then attempted suicide by removing the nails and swallowing them.

183.     On or about July 29, 2020, Mr. Bernard attempted suicide by swallowing six nails. Mr. Bernard informed Nurse Heffelfinger, Nurse Hofilena, CNA Barlow, and CNA Grossman of this incident, but they denied him medical treatment.

184.     In another incident, Dr. Fior watched Mr. Bernard swallow nails but did nothing to intervene or stop Mr. Bernard from harming himself.

185.     From approximately March 2021 through August 2021, Mr. Bernard was placed on crisis observation.  Despite his known history of swallowing sharp metal objects in an attempt to self-harm, he was again placed in cells with exposed wires, screws, and other objects posing a risk of further incidents.

186. On April 11, 2021, Mr. Bernard was prescribed prazosin for his PTSD-related nightmares and hyperarousal. He was also prescribed lithium to target irritability and mood swings. However, Nurse Hoffman discontinued Mr. Bernard from lithium and prazosin on April 22, 2021, without justification or medical direction. After repeatedly requesting to be reinstated on his medications, Mr. Bernard attempted suicide again by swallowing metal screws. He continues to be denied his prescribed mental health medication.

187. On or about August 7, 2021, Mr. Bernard repeatedly asked Unknown Wexford Employees and Unknown IDOC Employees to see a crisis team member, but his pleas were denied. Mr. Bernard was then pepper-sprayed without provocation and left in his cell without a shower for two days.

188. To this day, Defendants continue to deny Mr. Bernard mental health medication, despite knowing of Mr. Bernard's need for the medication and of the adverse effects he suffers without it. He remains at risk of depression and suicide.

189. Despite being aware of Mr. Bernard's mental health needs, including his need for medication and individual and group therapy, and Mr. Bernard's high risk of self-harm, the aforementioned Defendants have failed to protect Mr. Bernard from self-harm and suicide, resulting in unnecessary pain and suffering to Mr. Bernard.

**I. Defendants Fail to Protect Mr. Bernard Against Physical and Sexual Assaults**

190. At Dixon, Mr. Bernard is incarcerated under conditions posing a substantial risk of serious harm, in that Dixon's staff, including CNA Grossman, CNA Barlow, CNA Russell, Officer Cassidy, Lt. Ganger, and Officer Miller permit other offenders to sexually and physically assault Mr. Bernard.

33

191.    Defendants are aware that Mr. Bernard is highly susceptible to attacks from other inmates due to his near-total incapacitation and various disabilities.

192.    Throughout his time at Dixon, Mr. Bernard has been sexually assaulted by inmates numerous times, often under orders or supervision of various Defendants.

193.    "Inmate Milan," who on information and belief was employed as a medical aid at Dixon, has been permitted to sexually assault Mr. Bernard on several occasions between approximately September 2019 and January 2021.  Often, these assaults occurred under orders or supervision of CNA Russell, CNA Barlow, and Officer Miller.

194.    On or about mid-September 2019, Mr. Bernard was sexually assaulted by "Inmate Milian" and an unknown inmate.

195.    On or about October 3, 2019, Mr. Bernard informed an Unknown IDOC Employee that he wanted to report sexual assaults by inmates and staff, but his request was ignored.

196.    On or about October 3, 2019, Mr. Bernard informed QMHP Watson that he wanted to report sexual assaults by inmates and staff, but his request was denied.

197.    On or about October 6, 2019, Mr. Bernard informed LSW Beaber that he wanted to report sexual assaults by inmates and staff, but LSW Beaber failed to report them.

198.    On or about October 10, 2019, Mr. Bernard was sexually assaulted by "Inmate Milian" under orders of Unknown Wexford Employees and Unknown IDOC Employees.

199.    On or about October 11, 2019, in the presence of Office Miller, Unknown Wexford Employees allowed "Inmate Milian" to sexually assault Mr. Bernard.

200.    On or about October 13, 2019, Mr. Bernard informed LSW Beaber that he wanted to report sexual assaults by inmates and staff, but LSW Beaber failed to report them.

201.     On or about October 20, 2019, Mr. Bernard informed LSW Beaber that he wanted to report sexual assaults by inmates and staff, but LSW Beaber failed to report them.

202.     On or about October 21, 2019, in the presence of Unknown IDOC Employees, Mr. Bernard was sexually assaulted by "Inmate Milian" under orders of CNA Russell and CNA Barlow.

203.     On or about October 22, 2019, Mr. Bernard was sexually assaulted by "Inmate Milian" in the presence of Unknown Wexford Employees and Unknown IDOC Employees.

204.     On or about October 23, 2019, Mr. Bernard was sexually assaulted by "Inmate Milian" in the presence of Unknown Wexford Employees and Unknown IDOC Employees.

205.     On or about October 27, 2019, Mr. Bernard informed LSW Beaber that he wanted to report sexual assaults by inmates and staff, but LSW Beaber failed to report them.

206.     On or about November 12, 2019, Mr. Bernard informed LSW Beaber that he was sexually assaulted by "Inmate Milian" and an unknown inmate.  LSW Beaber did not report the assaults and instead wrote Mr. Bernard a ticket.

207.     In and around March 2020, Mr. Bernard was required to share a cell with "Inmate Torres," who is known by Dixon's staff to be violent towards other cellmates.  During the 11 days that Torres shared his cell, Torres attacked Mr. Bernard every night.  Mr. Bernard complained of these attacks to Dixon's staff, including Nurse Allen, Nurse Carpenter, Warden Nicklaus, Lt. Ganger, Officer Cassidy, and other Unknown IDOC Employees, but they permitted these attacks to continue.

208.     On or about April 23, 2020, in the presence of CNA Barlow and Nurse Heffelfinger, Mr. Bernard was physically assaulted and almost sexually assaulted by two unknown inmates.

209.     From approximately September 2019 through June 2020, CNA Barlow would pull Mr. Bernard's hair out in the presence of CNA Grossman and Officer Cassidy, who would permit the abuse to continue.

210.     On or about October 11, 2019, in the presence of Office Miller, Unknown Wexford Employees allowed "Inmate Milian" to sexually assault Mr. Bernard.

211.     On or about May 8, 2020, Officer Cassidy entered Mr. Bernard's cell, removed his penis, and demanded Mr. Bernard perform oral sex on him.  Mr. Bernard refused and requested to speak to a crisis team member, but Officer Cassidy denied his request and continued to sexually assault Mr. Bernard. Mr. Bernard subsequently informed Nurse Heffelfinger, Nurse Hofilena, CNA Grossman, and CNA Barlow of this incident, but they did nothing.

212.     In approximately early June 2020, while on crisis watch, Mr. Bernard was sexually assaulted by two unknown inmates.  Mr. Bernard informed mental health staff of the assault the following day, but they did nothing.

213.     On or about July 29, 2020, CNA Barlow and Nurse Heffelfinger took Mr. Bernard to the bath area where no security was present.  There, in the presence of CNA Barlow, Nurse Heffelfinger, and Dr. Fior, several inmates and other workers on duty came into the bathtub area and assaulted Mr. Bernard physically and tried to assault him sexually.  CNA Barlow, Nurse Heffelfinger, and Dr. Fior failed to prevent the assaults from happening.

214.     On or about September 12, 2021, Lt. Long and Officer Cassidy ordered unknown inmates to physically assault Mr. Bernard in retaliation for Mr. Bernard filing grievances about Dixon staff.

215.    On or around September 12, 2021, Lt. Long and Officer Cassidy physically and sexually assaulted Mr. Bernard, and intentionally kicked over the Geri Chair with Mr. Bernard in it.

216.    On or about March 18, 2022, CNA Grossman and Officer Cassidy ordered an inmate to physically assault Mr. Bernard in retaliation for filing grievances. When the inmate refused, Officer Cassidy wrote him a ticket.

217.    Mr. Bernard repeatedly informed LSW Beaber and QMHP Watson that he was being sexually assaulted by inmates.  Neither LSW Beaber nor QMHP Watson ever reported Mr. Bernard's claims.

218.    Director Jeffreys, Warden Tack, Warden Nicklaus, Warden Varga, Dr. Fior, QMHP Watson, LSW Beaber, Nurse Allen, Nurse Carpenter, Nurse Heffelfinger, Nurse Hofilena, CNA Russell, CNA Barlow, CNA Grossman, Lt. Ganger, Lt. Long, Officer Cassidy, Officer Miller, Unknown IDOC Employees, and Unknown Wexford Employees are aware that Mr. Bernard is at risk of repeated attacks because of his physical limitations, history of attacks, and grievances and yet deliberately fail to protect Mr. Bernard.

219.    Despite this knowledge, the aforementioned Defendants failed to protect Mr. Bernard from physical and sexual assault.

## COUNT I

**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
BY FAILING TO REMEDY SYSTEMIC DEFICIENCIES**

**(42 U.S.C. § 1983 / 8th Amendment)**

**Against Defendants:
Nurse Allen, CNA Barlow, LSW Beaber, Dr. Chess, CNA Decrane, Dr. Fior, CNA
Grossman, Nurse Heffelfinger, Nurse Hofilena, Nurse Hutchison, Director Jeffreys, QMHP
Miller, Warden Nicklaus, CNA Russell, Dr. Susnjar, Warden Tack, PT Tunink, Warden
Varga, QMHP Watson, Dr. Young, Dr. Zahtz, Unknown Wexford Employees, *and*
Unknown IDOC Employees**

220.    Mr. Bernard restates and realleges Paragraphs 1 through 219 of this Complaint as
if fully set forth herein.

221.    As explained above, Mr. Bernard suffers from objectively serious mental illnesses,
physical impairments, and disabilities.

222.    At all relevant times, Defendants Nurse Allen, CNA Barlow, LSW Beaber, Dr.
Chess, CNA Decrane, Dr. Fior, CNA Grossman, Nurse Heffelfinger, Nurse Hofilena, Nurse
Hutchison, Director Jeffreys, QMHP Miller, Warden Nicklaus, CNA Russell, Dr. Susnjar, Warden
Tack, PT Tunink, Warden Varga, QMHP Watson, Dr. Young, Dr. Zahtz, Unknown Wexford
Employees, *and* Unknown IDOC Employees (collectively, "Count I Defendants") were
responsible for providing appropriate medical care to Mr. Bernard.

223.    At all relevant times, Count I Defendants had knowledge of Mr. Bernard's
objectively serious mental illnesses and physical impairments.

224.    At all relevant times, Count I Defendants understood the significant risk of harm
Mr. Bernard faced if not provided with adequate medical care.

225. Despite that knowledge, Count I Defendants acted with deliberate indifference to Mr. Bernard's objectively serious medical needs by failing to remedy systemic deficiencies at Dixon, in violation of the Eighth Amendment.

226. Specifically, Count I Defendants failed to remedy systemic deficiencies with regard to Dixon's unsafe Hoyer Lift, and Mr. Bernard was injured as a result.

227. Count I Defendants failed to remedy systemic deficiencies with regard to Mr. Bernard's need for a proper transport chair, and Mr. Bernard was injured as a result.

228. Count I Defendants failed to remedy systemic deficiencies with regard to Mr. Bernard's unsafe and unsanitary Geri Chair, and Mr. Bernard was injured as a result.

229. Count I Defendants failed to remedy systemic deficiencies with regard to Dixon's medical staffing shortage, and Mr. Bernard was injured as a result.

230. Count I Defendants failed to remedy systemic deficiencies with regard to Dixon's delayed implementation and inadequate adherence to medical treatment plans, and Mr. Bernard was injured as a result.

231. Count I Defendants failed to remedy systemic deficiencies with regard to Dixon's delayed implementation and inadequate adherence to mental health treatment plans, and Mr. Bernard was injured as a result.

232. The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

233. Mr. Bernard's injuries and worsening conditions are and were proximately caused by Count I Defendants' misconduct in failing to remedy the aforementioned systemic deficiencies.

234.     As a result of Count I Defendants' failure to remedy the aforementioned systemic deficiencies, Mr. Bernard's recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT II

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### BY FAILING TO PROVIDE ADEQUATE MEDICAL CARE

### (42 U.S.C. § 1983 / 8th Amendment)

**Against Defendants:**
**Nurse Allen, CNA Barlow, LSW Beaber, Nurse Carpenter, CNA Decrane, CNA Felder, Dr. Fior, CNA Grossman, Nurse Heffelfinger, CNA Hendriksen, Nurse Hoffman, Nurse Hofilena, Nurse Hutchison, CNA Lewis, QMHP Miller, CNA Russell, PT Tunink, QMHP Watson, Dr. Young, Dr. Zahtz, Unknown Wexford Employees, *and* Unknown IDOC Employees**

235.     Mr. Bernard restates and realleges Paragraphs 1 through 234 of this Complaint as if fully set forth herein.

236.     As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

237.     At all relevant times, Defendants Nurse Allen, CNA Barlow, LSW Beaber, Nurse Carpenter, CNA Decrane, CNA Felder, Dr. Fior, CNA Grossman, Nurse Hayes, Nurse Heffelfinger, CNA Hendriksen, Nurse Hoffman, Nurse Hofilena, Nurse Hutchison, CNA Lewis, Nurse Martin, QMHP Miller, CNA Russell, PT Tunink, QMHP Watson, Dr. Young, Dr. Zahtz, Unknown Wexford Employees, *and* Unknown IDOC Employees (collectively, "Count II Defendants") were responsible for providing appropriate medical care to Mr. Bernard.

238.     At all relevant times, Count II Defendants had knowledge of Mr. Bernard's objectively serious mental illnesses, physical impairments, and disabilities, and understood the risk of harm Mr. Bernard faced if not provided with adequate medical care.

239.    Despite that knowledge, Count II Defendants acted with deliberate indifference to Mr. Bernard's objectively serious medical needs by failing to provide Mr. Bernard with adequate medical care, in violation of the Eighth Amendment.

240.    Specifically, Count II Defendants refused to provide adequate care for Mr. Bernard in that they routinely refused to clean him, change his clothes, change his diapers, or safely move him.

241.    Count II Defendants refused to provide adequate care for Mr. Bernard in that they inappropriately delegated his medical care to untrained inmates.

242.    Count II Defendants refused to provide adequate care for Mr. Bernard in that they denied him access to physical therapy specialists.

243.    Count II Defendants refused to provide adequate care for Mr. Bernard in that they denied him access to mental health specialists.

244.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

245.    Mr. Bernard's injuries and worsening conditions are and were proximately caused by Count II Defendants' misconduct in failing to provide adequate medical care.

246.    As a result of Count II Defendants' failure to provide adequate medical care, Mr. Bernard's recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT III

**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
BY WITHHOLDING PRESCRIPTION MEDICATIONS**

**(42 U.S.C. § 1983 / 8th Amendment)**

**Against Defendants:
Nurse Hayes, Nurse Heffelfinger, Nurse Hoffman, *and* Nurse Martin**

247.    Mr. Bernard restates and realleges Paragraphs 1 through 246 of this Complaint as if fully set forth herein.

248.    As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

249.    At all relevant times, Defendants Nurse Hayes, Nurse Heffelfinger, Nurse Hoffman, and Nurse Martin (collectively, "Count III Defendants") were responsible for providing appropriate medical care to Mr. Bernard.

250.    At all relevant times, Count III Defendants had knowledge of Mr. Bernard's objectively serious mental illnesses and physical impairments.

251.    At all relevant times, Count III Defendants had knowledge of Mr. Bernard's need for certain medications.

252.    At all relevant times, Count III Defendants understood the risk of harm Mr. Bernard faced if not provided with adequate medical care.

253.    Despite that knowledge, Count III Defendants acted with deliberate indifference to Mr. Bernard's objectively serious medical needs by withholding prescribed medications from Mr. Bernard without justification or medical direction to do so, in violation of the Eighth Amendment.

254. The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

255. Mr. Bernard's injuries and worsening conditions are and were proximately caused by Count III Defendants' misconduct in refusing to provide proscription medication.

256. As a result of Count III Defendants' failure to provide prescribed medications, Mr. Bernard's recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT IV

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS BY FAILING TO FOLLOW COVID-19 PROTOCOLS AND GUIDELINES

#### (42 U.S.C. § 1983 / 8th Amendment)

**Against Defendants:**
**Officer Eddinger, Dr. Fior, CNA Hendriksen, Director Jeffreys, CNA Lewis, Warden Nicklaus, Warden Tack, Warden Varga, *and* Officer Wolosonovich**

257. Mr. Bernard restates and realleges Paragraphs 1 through 256 of this Complaint as if fully set forth herein.

258. As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

259. Upon information and belief, Dixon implemented and enforced COVID-19 protocols and CDC COVID-19 guidelines requiring, among other policies, that medical and correctional staff wear facemasks when in the Health Care Unit.

260. At all relevant times, Defendants Officer Eddinger, Dr. Fior, CNA Hendriksen, Director Jeffreys, CNA Lewis, Warden Nicklaus, Warden Tack, Warden Varga, *and* Officer

Wolosonovich (collectively, "Count IV Defendants") were responsible for providing appropriate medical care to Mr. Bernard.

261.    At all relevant times, Count IV Defendants had knowledge of Mr. Bernard's objectively serious mental illnesses, physical impairments, and disabilities, and were aware that Mr. Bernard's disabilities placed him at a heightened risk of contracting COVID-19 and becoming seriously ill as a result.

262.    At all relevant times, Count IV Defendants understood the risk of harm Mr. Bernard faced if they did not follow COVID-19 protocols in the Health Care Unit.

263.    Despite that knowledge, Count IV Defendants were deliberately indifferent with regard to following COVID-19 protocols in the Health Care Unit, in violation of the Eighth Amendment.

264.    Specifically, Count IV Defendants failed to wear protective facemasks and failed to sanitize medical equipment between uses, in violation of IDOC COVID-19 policies.

265.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

266.    As a direct result of Count IV Defendants' failure to follow COVID-19 protocols in the Health Care Unit, Mr. Bernard contracted COVID-19 and became ill.

267.    As a result of Count IV Defendants' failure to follow COVID-19 protocols in the Health Care Unit, Mr. Bernard's recovery has been impeded and he suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT V

### DELIBERATE INDIFFERENCE TO
### INADEQUATE CONDITIONS OF CONFINEMENT

### (42 U.S.C. § 1983 / 8th Amendment)

### Against Defendants:
### Director Jeffreys, Warden Tack, Warden Nicklaus, Warden Varga, *and* Wexford

268.     Mr. Bernard restates and realleges Paragraphs 1 through 267 of this Complaint as if fully set forth herein.

269.     As described above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities, and therefore requires total self-care assistance.

270.     At all relevant times, Defendants Director Jeffreys, Warden Nicklaus, Warden Tack, Warden Varga, and Wexford (collectively, "Count V Defendants") were responsible for overseeing inmates' adequate conditions of confinement.

271.     At all relevant times, Count V Defendants were aware that Mr. Bernard's objectively serious mental illnesses, physical impairments, and disabilities necessitated total self-care assistance.

272.     Despite that knowledge, Mr. Bernard was and is subjected to unsanitary and inadequate conditions of confinement in violation of his Eighth Amendment rights.

273.     As described above, Mr. Bernard was regularly left in soiled diapers and clothing without being cleaned for several hours, if not days, at a time.  He was often coated in his own urine, feces, vomit, and rotten food, which led to rashes, infections, and foul odors.

274.     These conditions posed a serious risk to Mr. Bernard's health and safety, and were sufficiently prolonged so as to cause significant pain and discomfort.

275.     These conditions were so objectively adverse that they deprived Mr. Bernard of the minimal civilized measures of life's necessities, including clean clothing, sanitation, and hygiene.

276.     Count V Defendants knew that Mr. Bernard was regularly left in filthy and unsanitary conditions as a result of Mr. Bernard's grievances and their own personal observations.

277.     Count V Defendants knew that these unsanitary conditions posed a substantial risk of harm to Mr. Bernard.

278.     Despite this knowledge, Count V Defendants acted with deliberate indifference to Mr. Bernard's conditions of confinement by failing to initiate corrective action.

279.     The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

280.     As a result of the actions and inactions of Count V Defendants, Mr. Bernard has suffered and continues to suffer physical, mental, and emotional injuries.

## COUNT VI

**DELIBERATE INDIFFERENCE AND
FAILURE TO PROTECT AGAINST SELF-HARM AND SUICIDE**

**(42 U.S.C. § 1983 / 8th Amendment)**

**Against Defendants:
CNA Barlow, Officer Cassidy, Officer Eddinger, Dr. Fior, CNA Grossman, Nurse
Heffelfinger, Nurse Hoffman, Nurse Hofilena, Director Jeffreys, Warden Nicklaus, Dr.
Susnjar, Warden Tack, Warden Varga, QMHP Watson, Dr. Young, Unknown Wexford
Employees, *and* Unknown IDOC Employees**

281.     Mr. Bernard restates and realleges Paragraphs 1 through 280 of this Complaint as if fully set forth herein.

282.     As explained above, Mr. Bernard suffers from objectively serious mental illnesses and poses a significantly high risk of attempting suicide or self-harm.

283.     At all relevant times, Defendants CNA Barlow, Officer Cassidy, Officer Eddinger, Dr. Fior, CNA Grossman, Nurse Heffelfinger, Nurse Hoffman, Nurse Hofilena, Director Jeffreys, Warden Nicklaus, Dr. Susnjar, Warden Tack, Warden Varga, QMHP Watson, Dr. Young, Unknown Wexford Employees, *and* Unknown IDOC Employees (collectively, "Count VI Defendants") had knowledge of Mr. Bernard's objectively serious mental illnesses.

284.     At all relevant times, Count VI Defendants were aware that Mr. Bernard's mental illnesses, especially when left untreated, put him at risk of self-harm and suicide attempts.

285.     At all relevant times, Count VI Defendants understood the risk of harm Mr. Bernard faced if not given adequate psychological healthcare.

286.     Despite this knowledge, Count VI Defendants acted with deliberate indifference to Mr. Bernard's objectively serious medical needs by failing to protect Mr. Bernard from serious injury due to suicide attempts and self-harming behaviors, in violation of the Eighth Amendment.

287.     Specifically, Count VI Defendants refused to allow Mr. Bernard to speak to crisis team members.

288.     Count VI Defendants moved Mr. Bernard into non-crisis cells where he had access to objects that could severely harm or kill him.

289.     Count VI Defendants failed to act when witnessing Mr. Bernard attempt suicide and/or self-harm.

290.     The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

291.     As a result of Count VI Defendants' failure to protect Mr. Bernard from suicide and

self-harm, his recovery has been impeded and he has suffered unnecessary pain, deterioration of

his conditions, further injuries, anxiety, and emotional distress.

## COUNT VII

### FAILURE TO PROTECT
### AGAINST PHYSICAL AND SEXUAL ASSAULT

### (42 U.S.C. § 1983 / 8th Amendment)

**Against Defendants:**
**Nurse Allen, CNA Barlow, LSW Beaber, Nurse Carpenter, Officer Cassidy, Dr. Fior, Lt. Ganger, CNA Grossman, Nurse Heffelfinger, Nurse Hofilena, Director Jeffreys, Lt. Long, Officer Miller, Warden Nicklaus, CNA Russell, Warden Tack, Warden Varga, QMHP Watson, Unknown IDOC Employees, *and* Unknown Wexford Employees**

292.     Mr. Bernard restates and realleges Paragraphs 1 through 291 of this Complaint as

if fully set forth herein.

293.     As explained above, Mr. Bernard suffers from objectively serious mental illnesses,

physical impairments, and disabilities.

294.     Due to his objectively serious medical conditions, Mr. Bernard requires total self-

care assistance.  As a result, he is especially susceptible to being attacked, both physically and

sexually, by other inmates.

295.     At all relevant times, Defendants Nurse Allen, CNA Barlow, LSW Beaber, Nurse

Carpenter, Officer Cassidy, Dr. Fior, Lt. Ganger, CNA Grossman, Nurse Heffelfinger, Nurse

Hofilena, Director Jeffreys, Lt. Long, Officer Miller, Warden Nicklaus, CNA Russell, Warden

Tack, Warden Varga, QMHP Watson, Unknown IDOC Employees, *and* Unknown Wexford

Employees (collectively, "Count VII Defendants") had knowledge of Mr. Bernard's objectively

serious mental illnesses, physical impairments, and disabilities.

296.     At all relevant times, Count VII Defendants understood the risk of harm Mr. Bernard faced if not given adequate medical care and protection.

297.     At all relevant times, Count VII Defendants were aware that Mr. Bernard is at a heightened risk for assault due to his near-total incapacity and multiple mental and physical disabilities.

298.     Despite this knowledge, Count VII Defendants acted with deliberate indifference to Mr. Bernard's high-risk status by failing to protect Mr. Bernard from serious injury due to sexual and physical assaults at the hands of inmates and, at times, Dixon staff, in violation of the Eighth Amendment.

299.     Specifically, Count VII Defendants permitted Mr. Bernard to be sexually and physically assaulted by inmates and Dixon staff.

300.     Count VII Defendants ordered Mr. Bernard to be sexually and physically assaulted by inmates.

301.     Count VII Defendants refused to report Mr. Bernard's claims of sexual and physical assault.

302.     The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

303.     As a result of Count VII Defendants' failure to protect Mr. Bernard from sexual and physical assault, his recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT VIII

### DELIBERATE INDIFFERENCE AND
### FAILURE TO INTERVENE

### (42 U.S.C. § 1983 / 8th Amendment)

### Against Defendants:
**Officer Cassidy, Officer Eddinger, Lt. Ganger, Director Jeffreys, Lt. Long, Officer Miller, Warden Nicklaus, Officer Sotelo, Warden Tack, Warden Varga, Officer Wankeley, Unknown Wexford Employees, *and* Unknown IDOC Employees**

304.    Mr. Bernard restates and realleges Paragraphs 1 through 303 of this Complaint as if fully set forth herein.

305.    As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

306.    As a result of Mr. Bernard's objectively serious medical conditions, he requires total self-care assistance and is highly susceptible to assaults and suicide attempts.

307.    At all relevant times, Defendants Officer Cassidy, Officer Eddinger, Lt. Ganger, Director Jeffreys, Lt. Long, Officer Miller, Warden Nicklaus, Officer Sotelo, Warden Tack, Warden Varga, Officer Wankeley, Unknown Wexford Employees, *and* Unknown IDOC Employees (collectively, "Count VIII Defendants") were aware of Mr. Bernard's objectively serious medical needs and related risks.

308.    At all relevant times, Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard's Eighth Amendment rights from being violated.

309.    Specifically, Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard from receiving less-than-adequate medical care.

310.    Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard from being subjected to unsanitary conditions of confinement.

311. Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard from self-harming and attempting suicide.

312. Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard from being sexually assaulted.

313. Count VIII Defendants had a realistic opportunity to prevent Mr. Bernard from being physically assaulted.

314. Despite this, Count VIII Defendants acted with deliberate indifference toward Mr. Bernard's Eighth Amendment rights and overall wellbeing, by failing to prevent, and failing to attempt to prevent, the aforementioned constitutional violations committed against Mr. Bernard.

315. The misconduct described above was objectively unreasonable and was undertaken intentionally, with deliberate and/or reckless indifference to Mr. Bernard's Eighth Amendment rights and overall wellbeing.

316. As a result of Count VII Defendants' failure to intervene, Mr. Bernard's recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT IX

### *MONELL* CLAIM
### RE: SYSTEMIC DEFICIENCIES

### (42 U.S.C. § 1983 / 8th Amendment)

**Against Defendants:**
**Wexford, Director Jeffreys, Warden Tack, Warden Nicklaus, Warden Varga, *and* Warden Williams**

317. Mr. Bernard restates and realleges Paragraphs 1 through 316 of this Complaint as if fully set forth herein.

318. As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

319. Defendant Director Jeffreys, by virtue of his official capacity as IDOC Director, has assumed responsibility of overseeing the wellbeing of IDOC inmates.

320. Defendants Warden Nicklaus, Warden Tack, Warden Varga, and Warden Williams, by virtue of their current or former official capacity as Wardens of Dixon, have assumed responsibility of overseeing the wellbeing of Dixon inmates.

321. Defendant Wexford, by virtue of its contract with IDOC, has assumed responsibility for providing medical care to IDOC inmates.

322. Wexford was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution requires.

323. At all relevant times, Defendants Director Jeffreys, Warden Nicklaus, Warden Tack, Warden Varga, Warden Williams, and Wexford (collectively, "*Monell* Defendants") were responsible for overseeing the wellbeing of Mr. Bernard.

324. At all relevant times, *Monell* Defendants had knowledge of Mr. Bernard's objectively serious medical conditions and necessary level of care.

325. *Monell* Defendants were aware of Dixon's systemic deficiencies, as detailed above.

326. Despite this, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failing to correct systemic deficiencies in the provision of healthcare to inmates.

327. Specifically, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of understaffing medical personnel in the Health Care Unit at Dixon, such that inmates with physical and/or mental disabilities do not receive necessary care.

328.     As a direct result of *Monell* Defendants' widespread or "*de facto*" policy and/or custom of understaffing medical personnel in the Health Care Unit, Mr. Bernard was deprived of the round-the-clock self-care assistance he requires.

329.     *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of refusing to provide safe and suitable equipment for inmates with physical and/or psychological disabilities, including Hoyer Lifts, transport chairs, and Geri Chairs.

330.     As a direct result of *Monell* Defendants' widespread or "*de facto*" policy and/or custom of refusing to provide safe and suitable equipment, Mr. Bernard has been denied privileges he is entitled to, such as recreational time and family visits, and has been seriously injured.

331.     *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failure to timely implement and adhere to Medical Treatment Plans.

332.     As a direct result of *Monell* Defendants' widespread or "*de facto*" policy and/or custom of failing to timely implement and adhere to Medical Treatment Plans, Mr. Bernard's conditions have worsened and he has suffered unnecessarily.

## COUNT X

### *MONELL* CLAIM
### RE: INADEQUATE MEDICAL CARE

#### (42 U.S.C. § 1983 / 8th Amendment)

#### Against Defendants:
**Wexford, Director Jeffreys, Warden Tack, Warden Nicklaus, Warden Varga, *and* Warden Williams**

333.     Mr. Bernard restates and realleges Paragraphs 1 through 332 of this Complaint as if fully set forth herein.

334.    As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

335.    Defendant Director Jeffreys, by virtue of his official capacity as IDOC Director, has assumed responsibility of overseeing the wellbeing of IDOC inmates.

336.    Defendants Warden Nicklaus, Warden Tack, Warden Varga, and Warden Williams, by virtue of their current or former official capacity as Wardens of Dixon, have assumed responsibility of overseeing the wellbeing of Dixon inmates.

337.    Wexford, by virtue of its contract with IDOC, has assumed responsibility for providing medical care to IDOC inmates.

338.    Wexford was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution requires.

339.    At all relevant times, *Monell* Defendants were responsible for overseeing the wellbeing of Mr. Bernard.

340.    At all relevant times, *Monell* Defendants had knowledge of Mr. Bernard's objectively serious medical conditions and necessary level of care.

341.    *Monell* Defendants were aware of Dixon's failure to provide adequate medical care to Mr. Bernard, as detailed above.

342.    Despite this, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failing to provide adequate healthcare to inmates.

343.    Specifically, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failure to establish rules and practices to ensure inmates with physical disabilities can receive the medical care prescribed by their doctors.

344.     *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failure to properly train its personnel in the care of inmates with physical disabilities.

345.     *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failure to make reasonable accommodations to ensure inmates can receive physical and occupational therapy as necessary.

346.     *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of denying inmates adequate medical care.

347.     Wexford has a widespread or "*de facto*" policy and/or custom of providing unjustifiably delayed medical care to inmates.

348.     As a direct result of *Monell* Defendants' aforementioned widespread or "*de facto*" policies and/or customs, Mr. Bernard's recovery has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## COUNT XI

### *MONELL* CLAIM
### RE: DELEGATION OF MEDICAL CARE

#### (42 U.S.C. § 1983 / 8th Amendment)

#### Against Defendants:
**Director Jeffreys, Warden Nicklaus, Warden Tack, Warden Varga, Warden Williams, *and* Wexford**

349.     Mr. Bernard restates and realleges Paragraphs 1 through 348 of this Complaint as if fully set forth herein.

350.     As explained above, Mr. Bernard suffers from objectively serious mental illnesses, physical impairments, and disabilities.

351.     Defendant Director Jeffreys, by virtue of his official capacity as IDOC Director, has assumed responsibility of overseeing the wellbeing of IDOC inmates.

352.     Defendants Warden Nicklaus, Warden Tack, Warden Varga, and Warden Williams, by virtue of their current or form er official capacity as Wardens of Dixon, have assumed responsibility of overseeing the wellbeing of Dixon inmates.

353.     Defendant Wexford, by virtue of its contract with IDOC, has assumed responsibility for providing medical care to IDOC inmates.

354.     Wexford was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution requires.

355.     At all relevant times, *Monell* Defendants were responsible for overseeing the wellbeing of Mr. Bernard.

356.     At all relevant times, *Monell* Defendants had knowledge of Mr. Bernard's objectively serious medical conditions and necessary level of care.

357.     At all relevant times, *Monell* Defendants understood that only qualified and properly trained medical staff were permitted to provide medical care to inmates.

358.     Despite this, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of failing to adhere to regulations in the provision of healthcare to inmates.

359.     Specifically, *Monell* Defendants have a widespread or "*de facto*" policy and/or custom of utilizing other untrained inmates to perform professional medical and self-care services to disabled inmates, including bathing, cleaning, feeding, and transporting disabled inmates and operating equipment such as the Hoyer Lift.

360.     As a direct result of *Monell* Defendants' widespread or "*de facto*" policy and/or custom of ordering untrained inmates to provide medical care to inmates, Mr. Bernard's recovery

has been impeded and he has suffered unnecessary pain, deterioration of his conditions, further injuries, anxiety, and emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eric Bernard respectfully requests that this Court enter a judgment in his favor and against Defendants, jointly and severally, for the following:

A.     A declaration that Defendants' indifference to Plaintiffs inhumane living conditions violated his Eighth Amendment rights;

B.     Temporary, preliminary, and permanent injunctive relief against Defendants, their successors, and other current and future employees of IDOC and Wexford from further depriving Mr. Bernard of his constitutional rights; and requiring Defendants and their successors to ensure that Mr. Bernard receives his self-care and medical treatment on a timely basis, including without limitation transfers or furloughs to facilities that are capable of providing constitutionally-adequate treatment and care to Mr. Bernard;

C.     Temporary, preliminary, and permanent injunctive relief against Defendants, their successors, and other current and future employees of IDOC and Wexford from requiring that they obtain, utilize, and train their employees in the proper use of equipment necessary for the proper and safe care of Mr. Bernard, including without limitation a safe and functional Hoyer Lift, ADA accessible bed, and transport chair;

D.     Damages in an amount to be proved at trial to compensate him for his injuries, pain, suffering, and physical, emotional, and mental trauma;

E.     Punitive damages to punish Defendants' deliberate indifference to Mr. Bernard's physical and mental well-being and to deter them and others from engaging in similarly unconstitutional and illegal conduct in the future;

F.      An award of full costs and attorneys' fees arising out of this litigation pursuant to

42 U.S.C. § 1988;

G.      An award of the costs and expenses incurred in prosecuting this Action; and

H.      For such other and further relief this Court deems just and equitable.

## V.      <u>**JURY DEMAND**</u>

361.    Mr. Bernard demands a trial by jury on all issues so triable.


                                              Respectfully submitted,

                                              **ERIC BERNARD**

                            By:     _/s/ Alice Kelly_____
                                    One of Plaintiff's Attorneys


Alice Kelly
Kyle Finnegan
Brian Cavanaugh
Sophie Honeyman
**ICE MILLER LLP**
200 W. Madison St., Ste. 3500
Chicago, IL 60606
312-726-8128
alice.kelly@icemiller.com
kyle.finnegan@icemiller.com
brian.cavanaugh@icemiller.com
sophie.honeyman@icemiller.com

*Attorneys for Plaintiff Eric Bernard*


DATED: January 06, 2023

## <u>CERTIFICATE OF SERVICE</u>

       I, the undersigned, hereby certify that, on January 6, 2023, in accordance with Fed. R. Civ. P. 5 and LR 5.5, I caused a true and correct copy of the foregoing *Third Amended Complaint* to be electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in the above-captioned matter.


            */s/ Kyle T. Finnegan*
             Kyle T. Finnegan